# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

MICHAEL R. KINDRED,

               Petitioner,

   v.                                    9:13-CV-1011
                                         (LEK/ATB)

J. COLVIN,

               Respondent.

---

MICHAEL R. KINDRED, Petitioner Pro Se
MICHELLE ELAINE MAEROV, Ass't Att'y Gen. for Respondent

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Lawrence E. Kahn, Senior United States District Judge.

Presently before this court is a petition, seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. (Petition ("Pet.")) (Dkt. No. 1). Petitioner brings this action, challenging a judgment of conviction rendered on November 1, 2010, after a jury trial in the Albany County Court. Petitioner was convicted of Criminal Possession of a Controlled Substance, Third Degree (N.Y. Penal Law § 220.16(1)) and Criminal Possession of a Controlled Substance, Fifth Degree (N.Y. Penal Law § 220.06(5)). He was sentenced to an aggregate determinate prison term of seven years, together with three years of post-release supervision.

On November 16, 2010, prior to filing his direct appeal, petitioner filed a motion

to vacate his conviction in the Albany County Court, pursuant to N.Y. Crim. Proc. Law § 440.10. (State Court Record ("SR") at 1-19) (Dkt. No. 9-2).[1] The Albany County Court denied petitioner's motion without a hearing on December 30, 2010, finding that all of petitioner's claims were record-based and belonged in a direct appeal.[2] (SR at 20-22). Petitioner's direct appeal and the appeal of the County Court's denial of his motion to vacate were consolidated. On November 1, 2012, the Appellate Division, Third Department denied the consolidated appeal, and the New York Court of Appeals denied leave to appeal on April 4, 2013. *People v. Kindred*, 100 A.D.3d 1038, 952 N.Y.S.2d 832 (3d Dep't 2012), *lv. denied*, 21 N.Y.3d 913, 966 N.Y.S.2d 364 (N.Y. 2013).

Petitioner raises the following grounds in support of his application:

(1)     The trial court erred in denying petitioner's motion to suppress evidence. (Pet. at 5).

(2)     The trial court erred by allowing testimony about the reputation of petitioner's passenger. (Pet. at 6).

(3)     Petitioner was denied the effective assistance of counsel. (Pet. at 6-7).

(4)     The County Court erred when it denied petitioner's section 440.10 motion to vacate his conviction. (Pet. at 7-8).

---

[1] Respondent has electronically filed the state court records in this case. (Dkt. No. 9-2). Respondent has labeled the records "SR" and has paginated them consecutively. The court will cite to the SR at the page as assigned by the respondent. The suppression hearing and the trial transcripts are filed at Dkt. Nos. 9-3 and 9-4, but are not labeled with the SR designation. The court will cite to the page number as assigned to the original transcript. The suppression hearing ("SH") begins at Dkt. No. 9-3, CM/ECF p.13 and ends at p.44).

[2] In the alternative, the trial court considered and denied petitioner's ineffective assistance of counsel claim on the merits. (SR at 22).

(5)     The County Court erred in admitting into evidence the cocaine found on
        petitioner's person based on the illegality of the search and based upon
        deficiencies in the chain of custody of the cocaine. (Pet. at 8-9).

Respondent has filed an answer, together with a memorandum of law and the pertinent

state court records. (Dkt. Nos. 9 – 9-4).  Petitioner has filed a traverse. (Dkt. No. 13).

For the following reasons, this court agrees with the respondent and will recommend

denial and dismissal of the petition.

## DISCUSSION

## I.     Relevant Facts

The Appellate Division outlined the relevant facts in this case. 100 A.D.3d at

1038. This court will rely upon the facts as stated by the Appellate Division,

supplemented by a review of the state court records submitted by the respondent,

including the transcripts of the suppression hearing and the trial.  On December 22,

2009,[3] the petitioner was observed making an illegal U-turn across four lanes of traffic

on Central Avenue in Albany, by City of Albany police officers, Nicholas Abrams and

Brian Lutz.  After the officers stopped the petitioner's vehicle, they recognized the

passenger as a known drug offender and prostitute.[4]  They also noticed an open

container of alcohol in the center console of petitioner's car.

At the suppression hearing, Officer Abrams testified that when he saw the open

container, he asked petitioner to step out of the car so that the officer could speak with

---

[3] Respondent's memorandum of law states that the date was December 22, 2010, but that is
clearly a typographical error.  The incident took place in December of 2009. *People v. Kindred*, 100
A.D.3d at 1038.

[4] Officer Abrams testified at the suppression hearing that he knew the passenger's first name,
and the officers had "numerous stops with [her]." (SH at 14).

3

him. (Suppression Hearing Transcript (SH at 14). After petitioner got out of the car, Officer Abrams asked him if "'he had anything on him he wasn't supposed to have.'" 100 A.D.3d at 1038 (quoting SH at 15). Petitioner responded that he had some marijuana on him, and at that time, Officer Abrams asked petitioner to turn around and put his hands on his head. (*Id*). Officer Abrams held petitioner's hands on his head and asked him whether he had "anything else" that he was not supposed to have. Officer Abrams testified that petitioner stated that he had "[j]ust the weed in my pocket . . . and some coke." *Id.*

At that time, Officer Abrams put petitioner's hands behind his back, "placed him in custody, put handcuffs on him, and retrieved the evidence out of his right jacket pocket . . . ." *Id.* The evidence in question was one plastic bag containing "a quantity of crack-cocaine, and one plastic bag containing a quantity of marijuana."[5] *Id.* Officer Abrams also found a marijuana cigarette in petitioner's left jacket pocket. (SH at 16). The court denied petitioner's motion to suppress the evidence from the bench, finding that the officers had probable cause to stop the petitioner's car after the officers observed the petitioner's vehicle making an illegal U-Turn. (SH at 27-32) Once the vehicle had been legally stopped, it was permissible for the officer to ask for a driver's license, and the officer was also authorized to ask the occupants to exit the vehicle during the course of the legal stop. (SH at 30).

---

[5] The Appellate Division's decision states that after petitioner responded that he also had cocaine, "he was immediately arrested and a plastic bag containing individually wrapped pieces of crack cocaine was retrieved from his pocket." 100 A.D.2d at 1038. At trial, Officer Abrams testified more specifically that the plastic bag contained "ten individually wrapped pieces or tie-offs of what appeared to be crack-cocaine." (Trial Transcript "Tr." at 202) (Dkt. No. 9-2 at 128).

The trial court then considered the motion to suppress as it related to petitioner's statements and found that the petitioner was not "in custody" until **after** he made the statement, about having marijuana in his possession, and nodded toward the pocket where the substances were located. (SH at 30-31). The court found that a reasonable person would not believe that he was still free to leave after he was handcuffed. However, the court held that the initial statements made by the petitioner in the absence of *Miranda* warnings were in response to Officer Abrams "investigative inquiry and not custodial interrogation." (*Id.*) The petitioner's motion to suppress the statements regarding the possession of the marijuana and cocaine was denied. (*Id.*) The court held that petitioner's arrest was lawful based upon his statements regarding the possession of the drugs, and that the seizure of the drugs was properly made pursuant to the petitioner's lawful arrest. (SH at 32).

Petitioner was ultimately charged with one count each of criminal possession of a controlled substance in the third degree and criminal possession of a controlled substance in the fifth degree. Both Officer Abrams and Officer Lutz testified at petitioner's trial. (Trial Transcript ("Tr.") at 190-220 (Officer Abrams); 220-46 (Officer Lutz)).[6] In addition to the officers who stopped petitioner for the illegal U-turn, the prosecution offered the testimony of Detective John Monte. The court allowed Detective Monte to testify after discussing the issue with the parties and considering defense counsel's objections to the testimony. (Tr. at 249-53). After the judge

---

[6] The trial testimony itself is all located in Dkt. No. 9-4. Thus, the court will cite only to the pages as assigned to the original transcript.

explained the purpose of his testimony,[7] Detective Monte gave the jury a general background about the drug trade and drug possession. (Tr. at 254-67). Detective Monte testified about the factors that are considered in determining whether someone is possessing narcotics for personal use or with intent to sell, such as the quantity of drugs or the manner in which they are packaged.[8] (Tr. at 259-60). Defense counsel re-stated his objection to Detective Monte's testimony after the testimony was complete. (Tr. at 278). Two other individuals testified for the prosecution: Detective John Riley, who testified regarding the chain of custody of the drugs after he obtained the package on December 23, 2009, and Luz Laboy, a forensic scientist, who tested the drugs. (Tr. at 268-73 (Riley); 280-88 (Laboy)).

A letter, written by petitioner to the trial court judge, was also admitted as evidence. (Tr. at 289). The letter was redacted as stipulated by the parties. The letter was a description of the incident by the petitioner. (Tr. at 290-92). In addition to describing his version of the details of the traffic stop, petitioner stated that he "had just purchased the weed and cocaine from a street dealer so I could get sexual favors from my female passenger who was in the car with me." (Tr. at 292).

The petitioner testified on his own behalf. (Tr. at 296-317). The petitioner's defense focused upon attempting to show that he possessed the drugs for personal use

---

[7] At the close of Detective Monte's testimony, the court gave the jury "cautionary instructions" about Detective Monte's testimony. (Tr. at 267).

[8] The crack-cocaine found on petitioner's person was packaged in "tie-offs." Detective Monte explained that a tie-off is a common form of packaging. (Tr. 260). The crack-cocaine is placed in the corner of a regular sandwich bag, a knot is tied around it, and the excess plastic is pulled away so that "it looks like a little piece of a white chunky substance wrapped by plastic with a knot on the top . . . ." (*Id.*)

only and not with intent to sell.  He testified that after he ran into his female passenger, Jodi,[9] she asked him to go to her house "and chill." (Tr. at 299).  Petitioner suggested that they get some drugs, so he "bought a bag of weed." (*Id.*)  He stated that he had $50.00 left over from the purchase, and he asked Jodi whether she knew where "to get anything for that." (*Id.*)  Petitioner stated that he was hoping to get some "sexual favors" in return. (*Id.*)

Jodi directed petitioner to a particular gas station, and he drove her there. (Tr. 300).  Petitioner gave Jodi the money, and testified that "because [Jodi] is a regular customer, they usually give her something extra." (*Id.*)   When Jodi got back into the car after approximately twenty five minutes, she showed petitioner what she purchased for the money and placed the package in his hand. (Tr. at 302).  At that time, Jodi stated that she forgot her cigarettes and lighter in the "place." (*Id.*)  Petitioner testified that when Jodi jumped out of the car to retrieve her property, "not thinking," he threw the bag in his right jacket pocket without "counting" it, or even opening it. (*Id.*)  He testified that he did not know how many pieces of crack-cocaine Jodi had given him. (*Id.*)  Petitioner testified that when Jodi returned, they left the area by "back[ing] in the driveway," making the U-Turn, and going back up Central Avenue toward Jodi's house. Petitioner subsequently noticed the police car behind him, and was stopped by Officers Abrams and Lutz. (Tr. at 302-303).

Petitioner then described his version of the police encounter. (Tr. 304-306). Petitioner testified that when the officers approached the car, they called Jodi by name,

---

[9] Although there are instances in the transcript in which this individual's name is spelled "Jody," it appears that the correct spelling is "Jodi."

and Officer Abrams asked her what was in a "black bag" she had in her hand.[10] (Tr. at

304). Jodi told him it was "only a beer," but when they asked her for identification, she

did not have any. Officer Abrams told Officer Lutz to take Jodi out of the car and

handcuff her because they were going to take her downtown, due to her lack of

identification. Petitioner testified that Officer Abrams then told petitioner to get out of

the car, and after some conversation about Jodi's reputation, he asked petitioner to

place his hands on his head. (Tr. at 304-305).

At that time, Officer Abrams asked whether petitioner had anything on him that

he was not "supposed to have," and petitioner responded that he had a bag of weed.[11]

(Tr. at 305). Petitioner testified that Officer Abrams then took petitioner's hands off his

head and handcuffed him, after which, he pulled the marijuana out of his left pocket.

(*Id.*) Petitioner stated that Officer Abrams then asked him whether there was "anything

else you want to tell me that you have on you," and petitioner responded that he had "a

little coke in the right pocket." (*Id.*) Petitioner continued to maintain that Jodi gave him

the cocaine, that he did not know how much was in the bag, and he was only "hoping"

to have sex with Jodi as a result. (*Id.*) However, petitioner stated that he was not

"planning" for it. He did not know what he was going to do. (Tr. at 306).

On cross examination, petitioner stated that Jodi took a "little longer than usual,"

when she was purchasing the drugs, and "she must have done a couple of different

---

[10] On cross-examination, petitioner maintained that the beer was in a "black bag," and the officers did not know it was an open container of alcohol until "after the fact." (Tr. at 313).

[11] Petitioner commented that when Officer Abrams asked him whether he had anything he was not supposed to have, petitioner felt he "was being detained." (Tr. at 305).

favors . . . [because] [s]he got a little more than you normally get for the money she spent." (*Id.*)  Petitioner admitted that he told the officer that he had a bag of weed in his left pocket.[12]  He testified that he knew he had cocaine in his pocket, but had no idea how much. (Tr. at 312, 315).  In fact, on cross-examination, he testified that he forgot that he threw the cocaine in his pocket. (Tr. at 315).  He stated that he was only hoping to "enjoy" the cocaine with his companion in exchange for some "kindness." (Tr. at 308, 316).  Petitioner was convicted of both possession and possession with intent to sell the drugs.

## II.  Generally Applicable Law

### A.  Cognizable Claim

Section 2254 provides that an application for writ of habeas corpus will be entertained on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  Claims that are rooted in alleged errors of state law are not cognizable in a federal habeas corpus action. *See Swarthout v. Cooke*, 562 U.S. 216, __, 131 S. Ct. 859, 860 (2011) (habeas statute "unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"); *Estelle v. McGuire*, 502 U.S. 62,

---

[12] Officer Abrams testified that he removed both the marijuana and the crack cocaine from petitioner's right jacket pocket. (SH at 15, Tr. at 198, 202).  Petitioner testified on direct examination that he threw the crack cocaine in his right pocket. (Tr. at 302, 305, 315).  On cross-examination, petitioner stated that he told Officer Abrams that he had "a bag of weed" in his left pocket. (Tr. 314).  The prosecutor asked about "some weed" in petitioner's "left pocket." (T. 315).  A marijuana cigarette was found in petitioner's left jacket pocket, but was not discussed at trial. (SH at 16).  The discrepancy is not relevant to this court's decision.

67 (1991) (federal habeas relief does not lie for errors of state law).

Additionally, in *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court held that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a petitioner may not challenge an allegedly unconstitutional search and seizure in an application for federal habeas relief. *Id.* at 481-82; *see also Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992); *Pina v. Kuhlmann*, 239 F. Supp. 2d 285, 289 (E.D.N.Y. 2003) ("It is well settled that [Fourth Amendment] claims are not cognizable for habeas corpus review where a State has provided a full and fair opportunity to litigate this issue.").

The Second Circuit has determined that review of a Fourth Amendment claim in a habeas corpus application is proper only if: (1) the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (2) the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in that process. *See Capellan*, 975 F.2d at 70; *Gates v. Henderson*, 568 F.2d 830, 839-40 (2d Cir. 1977). New York provides an approved mechanism for litigating Fourth Amendment claims. *See Capellan*, 975 F.2d at 70 (citing N.Y. Crim. Proc. § 710.10 et seq.); *Blake v. Martuscello*, No. 10-CV-2570, 2013 WL 3456958, at *5 (E.D.N.Y. July 8, 2013) (citing N.Y. Crim. Proc. Law § 710.10 and finding that the Second Circuit has explicitly approved New York's procedure for litigating Fourth Amendment claims) (citing *inter alia Capellan*, 975 F.2d at 70 n.1) (other citations omitted)).

The Supreme Court has extended *Stone* to preclude habeas review of a "Fourth

Amendment challenge to the introduction of a confession made after an allegedly unlawful arrest." *Glover v. Herbert,* 431 F. Supp. 2d 335, 338 (W.D.N.Y. 2006) (citing *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983) (per curiam) (reversing grant of habeas corpus where circuit court of appeals found that the issue was whether there was an unattenuated causal link between the custodial statements made by respondent and a violation of the Fourth Amendment)). Thus, *Stone* bars habeas review of claims that statements made during or after an allegedly unlawful arrest should have been suppressed as fruit of that illegal arrest. *Cardwell,* 461 U.S. at 572-73, *Glover,* 431 F. Supp. 2d at 338.

### B.    Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

"A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in

terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir.1982)).

### C.    Procedural Bar

In addition exhausting his state court remedies, a petitioner must comply with all state court procedural rules for bringing his claim.  A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal nature of the claim.  *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977).  The procedural bar applies if the last state court decision to address the issue "'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added).  This rule applies whether the independent state law ground is substantive or procedural. *Id*.

There are certain situations in which the state law basis for decision will not be considered "adequate":  (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); (2) where the state procedural rule was not "'firmly established and regularly followed,'" *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *James v. Kentucky*, 466 U.S. 341, 348-349 (1984); and (3) where the prisoner had "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so, *Wainwright v.*

*Sykes*, 433 U.S. at 87. In certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. at 376).

A state prisoner who has procedurally defaulted on a federal claim in state court may only obtain federal habeas review of that claim if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that he is "actually innocent." *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

To demonstrate "actual innocence," a habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him, but for the alleged constitutional violation. *Murden v. Artuz*, 497 F.3d 178, 194 (2d Cir. 2007); *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "Actual innocence" requires factual innocence, not "legal" innocence. *Murden v. Artuz*, 497 F.3d at 194. A claim of actual innocence requires petitioner to put forth new, reliable evidence that was not presented at trial. *Cabezudo v. Fischer*, 05-CV-3168, 2009 WL 4723743, at *13 (E.D.N.Y. Dec. 1, 2009) (citing *Lucidore v. N.Y.S. Div. of Parole*, 209 F.3d 107, 114 (2d Cir. 2000)); *Schlup v.*

*Delo*, 513 U.S. at 316, 327-328.

Finally, a federal habeas claim will be procedurally barred if the petitioner has failed to exhaust his state court remedies prior to bringing his application for federal relief, but return to state court is foreclosed by a procedural bar. In such a case, the ground is "deemed" exhausted, but is subject to the procedural default analysis discussed above. *Bossett v. Walker*, 41 F.3d 825 (2d Cir. 1994) (citing *Grey v. Hoke*, 933 F.2d at 120-21). In order to overcome the procedural default, petitioner would have to show cause for his failure to raise this issue and prejudice resulting from the constitutional violation.

### D. The AEDPA

Once the petitioner has surmounted all the procedural requirements attendant to an application for habeas corpus, the court may consider the merits of the petitioner's constitutional claims. The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that, when a state court has adjudicated the **merits** of a petitioner's constitutional claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008). This is a "difficult to meet," and "highly deferential standard for evaluating

state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, __ U.S. __ , 131 S. Ct. 1388, 1398 (2011) (citations omitted).

Under section 2254(d)(1), a state-court decision is contrary to clearly established Supreme Court precedent if its "conclusion on a question of law is 'opposite' to that of the Supreme Court or if the state court decides a case differently than the Supreme Court's decision 'on a set of materially indistinguishable facts.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo*. *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

## III. <u>Suppression of Evidence (Grounds 1 and 5)</u>

### A. **Fourth Amendment**

In this case, in Ground One of his application, petitioner claims that the initial stop of his car was "illegal," based upon the officers' "erroneous interpretation of the Vehicle and Traffic Law . . . ." (Pet. at 5). Petitioner also states that there was no

"probable cause" for the officers "accusatory questioning" which lead to petitioner telling the officers that he had drugs on his person. (*Id.*) In Ground Five of his application, petitioner repeats that the cocaine found in his pocket was erroneously admitted based on the "illegal search and seizure" and based upon "deficiencies in the chain of custody of the cocaine." (Pet. at 8). Prior to trial, petitioner moved for suppression of the physical evidence and his statements to Officer Abrams. He was afforded a full hearing, during which the officers testified and were subject to cross-examination by petitioner's counsel.

As stated above, *Stone* bars any consideration of whether the drugs and petitioner's statements were improperly admitted in violation of the Fourth Amendment regardless of whether petitioner was afforded a hearing. An "opportunity" means only that the state must make available the statutory mechanism for suppression of evidence that is tainted by an unlawful search and seizure, and that the state has not unconscionably prevented the petitioner from availing himself of it. *Crawford v. Artuz*, 165 F. Supp. 2d 627, 637 (S.D.N.Y. 2001).

Petitioner does not challenge the procedures used by the trial court, nor does he claim that he was precluded from utilizing those procedures due to an unconscionable breakdown in the system. Clearly the mechanism was available to him. In this petition, he simply reasserts the same arguments that he asserted during his suppression hearing and on appeal from his conviction. Mere disagreement with the outcome of the state court ruling does not constitute an unconscionable breakdown. *Johnson v. Yelich*, No. 9:11-CV-1207, 2013 WL 5592735, at *7 (N.D.N.Y. Oct. 10, 2013) (citing *Capellan v.*

*Riley*, 975 F.2d at 72.

Petitioner argues in his traverse that he did not have a full and fair hearing because his counsel was ineffective in failing to call Jodi as a witness and in failing to research whether petitioner actually violated the Vehicle and Traffic Law. (Dkt. No. 13 at 3-5). Whether petitioner's counsel was ineffective is a separate inquiry which the court will discuss below,[13] but it does not affect the application of *Stone* to the Fourth Amendment claims. *See Brunetti v. Semple*, No. 3:12-CV-1327, 2013 WL 5517863, at *5 (D. Conn. Oct. 2, 2013) (citing *Parker v. Ercole*, 582 F. Supp. 2d 273, 287 (N.D.N.Y. 2008) (holding that ineffective assistance of counsel is not the equivalent of an unconscionable breakdown); *Irizarry v. Ercole*, No. 08-CV-5884, 2013 WL 139638, at *5 & n.4 (S.D.N.Y. Jan. 11, 2013) (citing *Shaw v. Scully*, 654 F. Supp. 859, 865 (S.D.N.Y.1987) (noting that "the Court may not sidestep *Stone v. Powell* by equating ineffective assistance of counsel with unconscionable breakdown"); *Garcia v. Bradt*, No. 09-CV-7941, 2012 WL 2426773, at *12 (S.D.N.Y. Jan. 24, 2012) (same), (Rep't Rec.), *adopted*, 2012 WL 3027780 (S.D.N.Y. July 23, 2012)). Thus, because petitioner had a full and fair opportunity to litigate the issue in New York State court, grounds one and five, to the extent that they rely on the Fourth Amendment, are not cognizable on habeas review and may be dismissed.

---

[13] In *Kimmelman v. Morrison*, 477 U.S. 365, 382-83 (1986), the Supreme Court held that *Stone's* restriction on federal habeas corpus review of Fourth Amendment claims does not extend to Sixth Amendment ineffective assistance of counsel claims which are founded primarily on incompetent representation with respect to a Fourth Amendment issue. Petitioner has made other allegations regarding his counsel's effectiveness that are not related to the Fourth Amendment issue which will also be discussed below.

### B.  Fifth Amendment

#### 1.  Legal Standards

The Fifth Amendment protects individuals from compelled self-incrimination. Const. Amend 5.  A claim that petitioner's statements were "involuntary" under the Fifth Amendment is not barred by *Stone*. *See Cardwell*, 461 U.S. at 573 ("Only if the statements were involuntary, and therefore obtained in violation of the Fifth Amendment, could the federal courts grant relief on collateral review.")  In *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966), the Supreme Court barred the use of evidence against a defendant of any statements he made during an unwarned, custodial interrogation by the police.  The purpose of *Miranda* is to ensure that an individual who is in custody has sufficient knowledge of his or her constitutional rights regarding the interrogation, and that any waiver of those rights is knowing, intelligent, and voluntary. *United States v. Capers*, 627 F.3d 470, 474 (2d Cir. 2010) (citation omitted).

The Supreme Court has held that a temporary and relatively non-threatening detention involved in a traffic stop does not rise to the level of "custody" sufficient to require *Miranda* warnings, even if the motorists are questioned during the stop. *Nasca v. County of Suffolk*, 933 F. Supp. 2d 437, 442-43 (E.D.N.Y. 2013) (citing *Howes v. Fields*, __ U.S. __, 132 S. Ct. 1181, 1190 (2012); *Berkemer v. McCarty*, 468 U.S. 420, 436 (1984); *United States v. Newton*, 369 F.3d 659, 669 (2d Cir. 2004); *Cruz v. Miller*, 255 F.3d 77, 82-83 (2d Cir. 2001)).  Whether an individual is "in custody" is "determined by ascertaining whether that individual is 'subjected to restraints comparable to those associated with a formal arrest.'" *Georgison v. Donelli*, 588 F.3d

145, 155 (2d Cir. 2009) (quoting *Berkemer v. McCarty*, 468 U.S. at 441).

Thus, a routine traffic stop will only rise to the level of a custodial detention under circumstances which create a restraint upon the individual's freedom of movement to the degree associated with a formal arrest. *Nasca*, 933 F. Supp. 2d at 442-43 (quoting *Newton*, 369 F.3d at 670; *United States v. Ali*, 68 F.3d 1468, 1473 (2d Cir. 1995)). "[U]nless the facts clearly establish custody, a state court should be deemed to have made a reasonable application of clearly established Supreme Court law in concluding that custody for *Miranda* purposes was not shown." *Cruz*, 255 F.3d at 86.

### 2. Application

#### i. Exhaustion

In this case, even though petitioner's state appellate counsel raised both the Fourth and the Fifth Amendment arguments, and petitioner's pro se supplemental brief to the Appellate Division mentioned Fifth Amendment cases, the bulk of petitioner's suppression arguments were, and are, based upon the Fourth Amendment. The Appellate Division based its decision on the Fourth Amendment, finding that "the interviewing officer's observation of the open alcohol container and his knowledge that defendant's passenger was involved in prostitution and drug activity gave rise to a 'founded suspicion that criminality [was] afoot,' permitting questions that focused on defendant's possible wrongdoing." *Kindred*, 100 A.D.3d at 1039 (alteration in original) (citing *People v. Hollman*, 79 N.Y.2d 181, 191 (1992); *People v. Oldacre*, 53 A.D.3d 675, 676-77 (3d Dep't 2008)).

Both *Hollman* and *Oldacre* were based upon *People v. DeBour*, 40 N.Y.2d 210

(1976). In *DeBour*, the New York Court of Appeals established a four-tiered method of evaluating the propriety of encounters, initiated by police officers, the second level being the common law right of inquiry "'activated by a founded suspicion that criminal activity is afoot and permits a somewhat greater intrusion" than a simple request for information. *See People v. Hollman*, 79 N.Y.2d at 184-85 (discussing *DeBour*). This inquiry was based on the concept of unlawful "search and seizure," ***not*** upon the Fifth Amendment right against self-incrimination. *Id.*

In petitioner's case, the Appellate Division held that Officer Abrams's question to petitioner regarding whether he had anything that he "was not supposed to have" was permissible based upon the officer's observation of the open container and his knowledge that the passenger was involved in drugs and prostitution. *Kindred*, 100 A.D.2d at 1039. The court used the identical language used in *DeBour* to signal the permissibility of further inquiry under the Fourth Amendment. *Id.* The court did not reach any Fifth Amendment claim, presumably because it found that petitioner was not "in custody."

To the extent that petitioner argued in state court that the officer's inquiry about having anything that he was not supposed to have, "exceed[ed] the scope" of the questioning allowed by *DeBour*, converting this into a Fifth Amendment inquiry, the Appellate Division implicitly rejected the claim because, neither the Fifth Amendment, nor *Miranda* was never mentioned in the Appellate Division's opinion. *See* 100 A.D.2d at 1038-39. In petitioner's application for leave to appeal to the New York Court of Appeals, his attorney relied on *People v. Garcia*, 20 N.Y.3d 317 (2012) for the

proposition that the *DeBour* inquiry extended to conversations that police officers have with individuals who are found in an automobile. (SR at 254-59 (original letter), 260-61 (supplemental submission)).

The only mention of *Miranda* was a statement in counsel's original letter to the New York Court of Appeals, citing the County Court's suppression decision which held that "[t]he questioning of Mr. Kindred attendant to the traffic stop was lawful investigatory inquiry, which didn't require the administration of *Miranda* warnings (implying that the Court deemed the intrusion, at that point, a level-two encounter under *DeBour*)." (SR at 256) (Petitioner's Lv. to Appeal). Counsel's argument focused only on *Garcia* and the Fourth Amendment basis for his argument.[14] Thus, it is arguable that petitioner's Fifth Amendment claim was not raised in petitioner's application for leave to appeal to the New York Court of Appeals, and therefore, not exhausted. However, respondent has argued the claim on the merits, and this court will do so as well.[15]

---

[14] The court notes that petitioner alleged in his section 440.10 motion to vacate that the officers never read him his *Miranda* rights before or after his arrest. (Dkt. No. 9-2 at 5, 12-13). In the body of the motion, petitioner stated that he was "seized . . . in an attempt to obtain information unrelated to the traffic infraction, so any statement made to Officer Abrams was a product of police questioning which was not related to the traffic infraction . . . ." (*Id.* at 9). Petitioner also argued that statements taken absent *Miranda* warnings are presumed to be coerced. *Id.* at 13. The appeal of the denial of the motion to vacate was consolidated with petitioner's direct appeal. (Dkt. No. 9-2 at 29). There was no separate appeal, and therefore to the extent that petitioner's section 440.10 motion raised any Fifth Amendment claim, which may have been raised in the Appellate Division, it is arguable that it was not included in the application for leave to appeal to the New York Court of Appeals.

[15] The exhaustion requirement may be waived by the respondent. *See Cornell v. Kirkpatrick*, 665 F.3d 369, 376 (2d Cir. 2011) (finding that state waived exhaustion when it "explained in its brief to the District Court that Cornell had exhausted this particular ineffective assistance of counsel claim under the Sixth Amendment . . . .") Respondent's counsel states clearly in the brief that the Fifth Amendment claim is exhausted. (Dkt. No. 9-1 at CM/ECF p.17) (Resp. Mem. of Law).

## ii. Merits

This court turns to the merits of petitioner's Fifth Amendment claim under the AEDPA. Petitioner was stopped for making an illegal U-Turn, a factual finding that this court cannot change, based upon the binding nature of the state court's fact finding. 28 U.S.C. § 2254(e) (factual findings are presumed correct unless that presumption is rebutted by clear and convincing evidence). Petitioner has not rebutted this finding with sufficient evidence. The officer was entitled to ask the petitioner to exit the car after he saw the open container of alcohol. Once the officer noticed the open container, recognized the petitioner's passenger, and asked petitioner to get out of the car, he merely asked petitioner if he had anything that he was "not supposed to have."[16] At that point, there was no creation of "a restraint upon the individual's freedom of movement to the degree associated with a formal arrest" such that "custody" would be inferred for Fifth Amendment purposes. *See Georgison v. Donelli*, 588 F.3d at 155. When the petitioner stated that he had some "weed" in his pocket, Officer Abrams grabbed petitioner's hands and held them on top of his head, and asked petitioner again, "Do you have anything else on you you're not supposed to have . . . And he said, Just the weed in my pocket – and he was pointing with his head over toward his pocket – and some coke." (SR at 106). At that time, petitioner was formally arrested and handcuffed. The cocaine was then recovered from petitioner's right pocket. (*Id.*) Because there was no "custody" prior to the statement about having the drugs in his pocket, *Miranda* did

---

[16] Although there was some question about whether the officer asked if petitioner had anything that was "illegal," petitioner himself testified that the officer's words were: "did I have anything on me I ain't supposed to have." (Tr. at 305) (Petitioner's Direct Testimony at Trial). This wording has even less of a threatening connotation than the term "illegal."

not apply, and the Appellate Division did not act contrary to well-established Supreme Court precedent in implicitly rejecting any claim that could be interpreted as raising a Fifth Amendment claim. *See Cruz, supra.* Thus, petitioner's first and fifth grounds may be dismissed in their entirety.

## IV.  Confrontation Clause (Ground 2)

### A.  Legal Standards

The Confrontation Clause of the Sixth Amendment guarantees the right of a defendant in a criminal prosecution to confront and cross examine witnesses against him. *Crawford v. Washington*, 541 U.S. 36, 42 (2004). The Confrontation Clause forbids "admission of testimonial statements of a witness who did not appear at trial unless he or she was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Id.* at 53–54. However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n.9 (2004) (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)). The primary purpose of the Confrontation Clause is to prevent out-of-court statements from being used against a criminal defendant in lieu of in-court testimony subject to the scrutiny of cross-examination. *Skinner v. Duncan*, No. 01 Civ. 6656, 2003 WL 21386032, at *31 (S.D.N.Y. June 17, 2003) (citing *Douglas v. Alabama*, 380 U.S. 415, 418-19) (1965)).

### B.  Application

Petitioner argues here, as he argued in state court, that the admission of evidence regarding Jodi's ***reputation*** through the officers' testimony, was erroneous in itself and

also violated the Confrontation Clause. Respondent concedes that the constitutional issue was exhausted in state court, although the Appellate Division did not consider any constitutional issues in its decision.[17] Thus, the court will consider the merits under the AEDPA based upon the petitioner's Confrontation Clause arguments.

The Appellate Division did not act contrary to Supreme Court precedent by implicitly rejecting any Confrontation Clause claim raised by petitioner in his appellate papers. Officer Abrams was allowed to testify regarding **his** knowledge of Jodi's reputation for purposes of establishing petitioner's intent to exchange the drugs for sexual "benefits."[18] As the Appellate Division stated, "[a]ny potential prejudice was properly minimized by County Court's instruction directing the jury to consider the reputation testimony solely on the issue of intent and for no other purpose." *Kindred*, 100 A.D.2d at 1039.

Intent was an element in the first count of the indictment. (Tr. at 201-202) (Dkt. No. 9-2 at 127-28). Petitioner himself testified that he was aware of Jodi's reputation. (Tr. at 298). Petitioner testified that he bought a bag of weed and he "was hoping [he] could get some sexual favors" in exchange. (Tr. at 299). Petitioner also testified that

---

[17] The Appellate Division based its decision on the proposition that the evidence regarding Jodi's reputation was more probative than prejudicial and cited cases employing purely New York State law including *People v. Arafet*, 54 A.D.3d 517, 519 (3d Dep't 2008), *aff'd*, 13 N.Y.3d 460 (2009) and *People v. Mateo*, 2 N.Y.3d 383, 425 (2004), *cert. denied*, 542 U.S. 946 (2004). Erroneous evidentiary rulings do not automatically rise to the level of a constitutional violation. *Rosario v. Kuhlman*, 839 F.2d 918, 924 (2d Cir. 1988). An evidentiary ruling is only redressable in a federal habeas corpus proceeding if there is a showing an error "of constitutional dimension," that deprived him of "fundamental fairness." *Id.* Any claim based upon New York State evidentiary rules would not be cognizable in this court.

[18] This would involve both her reputation as a prostitute as well as her reputation regarding the use of drugs.

Jodi told him where to take her so that she could purchase the crack cocaine. Petitioner commented that "they usually give her something extra" because she was "a regular customer." (Tr. at 300). This testimony clearly implies that Jodi was a regular drug user and was willing to exchange sexual favors for drugs.

The court also notes that the prosecutor was not attempting to introduce Jodi's out-of-court *statements* that would need to be subject to cross-examination by defense counsel under the Confrontation Clause. The prosecutor was only attempting to introduce Jodi's reputation, as known to the officers, in order to show petitioner's intent. The Confrontation Clause is not implicated by the use of the officer's testimony rather than by putting Jodi on the stand. There was clearly no violation of the Confrontation Clause due to Jodi's absence from the trial and in the admission of both of the officers' testimony regarding her reputation as it was known to them. Thus, petitioner's confrontation clause claim may be dismissed.

## V.    Effective Assistance of Counsel (Ground 3)

### A.    Exhaustion

Respondent argues that petitioner has failed to exhaust his state court remedies with respect to his claim of ineffective assistance of trial counsel. (Resp.'s Mem. of Law at 14). Petitioner raised a claim of ineffective assistance of counsel in his section 440.10 motion to vacate, in his counseled brief to the Appellate Division, and in his application for leave to appeal to the New York Court of Appeals. (*See* Dkt. No. 9-2 at 4, 5, 18-21 (440.10 motion), 63-65 (counseled brief to the Appellate Division), 260 (counsel's application for leave to appeal to the Court of Appeals)).

In arguing that petitioner failed to exhaust his state court remedies, respondent cites *Cornell v. Kirkpatrick*, 665 F.3d 369, 376 (2d Cir. 2011), in which the court held that the mere mention of "ineffective assistance of counsel" in a defendant's Appellate Division brief, "without more" was insufficient to alert the New York courts to the possible federal basis for that claim. *Id.* (citing *Baldwin v. Reese*, 541 U.S. 27, 32-34 (2004)). In this case, petitioner did not cite the Sixth Amendment in his motion to vacate, and the County Court did not decide the issue on the merits of a Sixth Amendment claim because the court found that the allegations of ineffective counsel were record-based and should be raised in petitioner's direct appeal. However, the County Court discussed the merits in the alternative and cited the Sixth Amendment in its analysis. (SR at 20-22).

Petitioner's attorney did not specifically cite the Sixth Amendment in her brief to the Appellate Division. However, the cases that counsel relied upon specifically mentioned the Sixth Amendment and *Strickland v. Washington*, 466 U.S. 668 (1984). (SR at 61 (citing *People v. Caban*, 5 N.Y.2d 143, 152 (2005) (where the court discussed the differences between the federal and New York State standards for effective assistance of counsel, but stated that "[b]ecause our state standard . . . offers greater protection than the federal test, *we necessarily reject defendant's federal constitutional challenge by determining that he was not denied meaningful representation under the State Constitution*." 5 N.Y.2d at 155 (emphasis added)). Additionally, in this case, the prosecutor cited the Sixth Amendment of the federal constitution and Article I, section 6 of the New York State Constitution in the **first**

**sentence** of his argument to the Appellate Division. (Dkt. No. 9-2 at 200). The Appellate Division denied petitioner's ineffective assistance of counsel claim on the merits. 100 A.D.3d at 1041. In counsel's letter-application for leave to appeal to the New York Court of Appeals, he specifically mentioned that one of the "other issues" that was preserved for review was that "defense counsel rendered ineffective assistance . . . ." (SR at 258).

Respondent is correct that the mere mention of ineffective assistance of counsel is insufficient to alert the New York courts to a federal claim. However, here it is clear that the New York courts were alerted to the federal nature of his claim because the County Court analyzed the Sixth Amendment in its alternative[19] ruling, and because petitioner's appellate counsel and the prosecutor both relied upon state cases that employed both federal and state analysis. In *Jackson v. Conway*, the Second Circuit

---

[19] The County Court cited N.Y. Crim. Proc. Law 440.10(2)(c) in denying the petitioner's motion to vacate. Section 440.10(2)(c) generally sets up a procedural default analysis because the language of this section provides that the court must deny a defendant's claim when the defendant should have, but unjustifiably failed to present the claim on appeal. *See Carpenter v. Unger*, No. 9:12-CV-1240, 2014 WL 4105398, at *29 n.35 (N.D.N.Y. Aug. 20, 2014) (citing *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997) (section 440.10(2)(c) generally constitutes an adequate and independent state ground precluding federal habeas review absent cause and prejudice). However, in this case, the petitioner brought his section 440.10 motion before he brought his direct appeal, and the appeals of both were consolidated in the Appellate Division. Thus, the citation of section 440.10(2)(c) may have been inaccurate because petitioner *did* bring his ineffective assistance of counsel claim on appeal, albeit after his section 440.10 motion. Section 440.10(2)(b) would have provided a proper basis for the denial in this case. Section 440.10(2)(b) states that the court must deny such a motion when "[t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue . . . to permit adequate review thereof upon such an appeal. The section acts as a procedural default only if the defendant thereafter fails to bring the claim on direct appeal. *See Jackson v. Conway*, __ F.3d __, 2014 WL 3953234, at *26 (2d Cir. Aug. 14, 2014) (specifically finding no procedural default when petitioner did "in fact, raise the same ineffective assistance arguments on direct appeal" after having his section 440.10 motion denied pursuant to section 440.10(2)(b), and the Appellate Division rejected the claim on the merits). Thus, this court finds that petitioner did not commit a procedural default and will consider his claim on the merits.

stated that the crucial issue is whether the state court was alerted to the federal nature of the claim. 2014 WL 3953234 at *11 (citing *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)). Between petitioner's counseled brief and his pro se supplemental brief, petitioner raised all of the bases for ineffective counsel that he raises in this application, and the Appellate Division denied those claims on the merits.[20] This court finds that petitioner exhausted his remedies with respect to his ineffective assistance of counsel claim and did not commit a procedural default. The court will proceed to consider the merits under the AEDPA standard.

### B. Merits

Petitioner claims that the "totality" of counsel's errors deprived petitioner of the effective assistance of counsel. A review of the record shows that none of petitioner's allegations amount to ineffective counsel, and some of his factual allegations are not even supported by the record. First, petitioner argues that counsel failed to "explore the basis for the traffic infraction stop" and made no effort to obtain the "video recording" of the incident. (Pet. at 6). Petitioner presumes that if counsel had done so, the video would have shown that the initial traffic stop was improper, leading to the suppression of all the evidence recovered as a result of that stop. (*Id.* at 6-7).

During the suppression hearing, petitioner's counsel specifically raised the issue

---

[20] The court would also point out that the law governing procedural default states that it is the analysis of the ***last*** court to consider the issue in question which governs the determination of procedural default. *Jackson v. Conway*, 2014 WL 3953234 at *12 (citing *Messiah v. Duncan*, 435 F.3d 186, 195 (2d Cir. 2006)). The last state court must "clearly and expressly" state that its judgment rests on a procedural bar. *Messiah v. Duncan*, 435 F.3d at 195. In this case, the ***last*** court to consider petitioner's claim of ineffective counsel considered the issue on the merits, not based upon a procedural default. Thus, this court may consider the merits of petitioner's federal claim.

of the possible existence of a video tape of the incident. (SH at 2-6). One video tape was located, but it turned out to be a video tape of a statement made by petitioner to Officer Meehan, who was not involved in the initial stop, while petitioner was in the back seat of the patrol car, after the entire incident was over.[21] (SH at 2-3). The court noted that the video did not show "the U-turn and the stopping of Mr. Kindred's vehicle." (SH at 3). Counsel then stated that petitioner informed him that "there still may be another video out there . . . ." (*Id.*) Petitioner had filed a Freedom of Information Request that was still pending at the time of the suppression hearing. (*Id.*) Counsel asked the court if it would be possible to ask the Albany Police Department to "see if there is anything else out there." (SH at 5). The court responded that if there were another video tape, it should be turned over to the petitioner, and ordered the prosecutor to "make a phone call" in order to determine whether "in addition to the video that you saw, a camera or video that would have been on the car driven by Abrams or Lutz." (*Id.*)

The prosecutor stated that he had spoken to the officers, and that they knew "nothing about it." (SH at 6). The judge then stated that he would proceed with the hearing, but that one of the first questions for the officers should be whether the police car was "equipped with any video capability." (*Id.*) The court took a recess, and when

---

[21] This court notes that the patrol car with the video camera in it was driven by Officer Meehan, and was not the same car that was driven by Officers Abrams and Lutz when they stopped petitioner. (SH at 9). When Officer Abrams testified that his car did not have video capability, the prosecutor asked "It doesn't shoot inside your vehicle like it did with Officer Meehan's vehicle?" (*Id.*) Officer Abrams said: "Correct." (*Id.*) He stated that "none of the reserves in our units are equipped with audio and video, the digital video recording units. Only the primary vehicles are equipped with those devices, and some of the supervisor vehicles, I believe." (SH at 10). Thus, it is clear that no additional video of the traffic stop existed.

the court went back on the record, the prosecutor stated that the officers had "reassured [him]" that "there was no camera on their vehicle," meaning the car that was being driven by Officers Abrams and Lutz. (*Id.*) The court continued with the suppression hearing, but stated that if anything developed, requiring a reopening of the hearing, "[t]he Court will oblige." (SH at 7).

As ordered by the court, one of the preliminary questions the prosecutor asked Officer Abrams was whether there was "any camera or video in your vehicle," to which Officer Abrams responded "No, there is not." (SH at 9). Because the officers' car was not equipped with audio and video equipment, it is clear that there was no "missing video" to request, and counsel could not have been ineffective for failing to pursue the issue further or to request a video that did not exist.[22]

The same can be said for counsel's alleged failure to investigate the basis for the initial traffic stop. Petitioner appears to believe that if counsel had investigated the area and determined that a U-turn may have been legal, counsel could have succeeded in having all the evidence suppressed. However, Officer Abrams specifically testified that he saw petitioner's car "parked, facing westbound, do a U-turn over four lanes of traffic and continue eastbound on Central Avenue in front of us." (SH at 10-11). Officer Abrams testified that based on his "training and experience," the U-turn was a violation of the Vehicle and Traffic Law. (SH at 11). As the court cited in its decision, "the

---

[22] Petitioner also claims that counsel failed to "attempt to obtain the video recording from the camera the Albany County Police Department maintains at the intersection the arresting officers stated the u-turn happen at [sic]." (Pet. at 6). There was no discussion in the state court papers of a video camera maintained at any intersections, and certainly no evidence that such a camera, even if one existed, would have taped the incident in question.

officer's observation of the defendant's vehicle making a U-turn in violation of the Vehicle and Traffic Law provided a basis for the vehicle stop." (SH at 30) (citing *People v. Ingle*, 36 N.Y.2d 413 (1975)). According to *Ingle*, all that is required for a valid stop is that the officer "reasonably suspects a violation of the Vehicle and Traffic Law." 36 N.Y.2d at 414. Based upon Officer Abrams's testimony, counsel was not ineffective in investigating the scene to determine if U-turns were allowed in that area. Whether petitioner was actually guilty of an illegal U-turn would not have been relevant to the validity of the stop, which only required "reasonable suspicion."

Petitioner also complains that his attorney failed to question Officer Lutz about the 18-hour "gap" in the chain of custody of the drugs. (Pet. at 7). At trial, Officer Lutz testified that he obtained the cocaine from Officer Abrams at the scene of the arrest and field-tested the drugs at the police station. (Tr. at 235-38). The drugs were then secured in an evidence bag and placed in an evidence locker at the police station. Petitioner seems to allege that eighteen hours passed between the time that Officer Lutz obtained the drugs and when they were "vouchered into the police station evidence room." (Pet. at 7). In his section 440.10 motion, petitioner claimed that during this alleged 18-hour gap, "other drugs" that were seized that day could have been mixed or "commingled" with the drugs seized from petitioner. (SR at 12).

The concept of "chain of custody" goes only to the weight, not to the admissibility of the evidence. *McCalla v. Greiner*, 378 F. Supp. 2d 262, 272 (W.D.N.Y. 2005). Petitioner himself admitted that he gave Jodi money to purchase crack, Officer Lutz field tested the drugs at the station, and testified that he secured them. The court

also notes that Detective John Riley testified about the chain of custody of the drugs, stating that his job included obtaining the evidence from the "locker" on December 23, 2009 and that he responsibilities included the "care, custody, and control of narcotics and narcotics-related evidence from the time that I remove it from Locker Number 28. . . ." (Tr. at 268).

Detective Riley explained that Locker Number 28 is the "temporary overnight storage facility located in the South Station of the Albany Police Department." (*Id.*) He also testified that he was the individual who brought the evidence to the New York State Police Laboratory for testing. (Tr. at 270-71). Detective Riley was subject to cross-examination by counsel, and there was no evidence that the drugs had been tampered with or "mixed" with any other drugs that were recovered on the same day as petitioner suggests. (Tr. 273-75). Counsel did not act unreasonably in failing to pursue this speculative avenue of inquiry.

Petitioner claims that counsel did not "request" that the prosecutor produce documentation regarding Jodi's criminal "convictions" to which the arresting officer referred in his testimony. (Pet. at 7). This court notes that, before trial, there was a discussion about a "File 15"[23] pertaining to petitioner's passenger, Jodi. (Tr. at 29). This was relevant to the officer testifying that he was familiar with Jodi's reputation. Defense counsel argued strenuously that the officers' testimony regarding Jodi's reputation was inappropriate. (Tr. at 18-19). This discussion began in reference to the letter, written by petitioner to the court in which he made various admissions. (Tr. 14-

---

[23] From the court's discussion with counsel, it appears that a "File 15," relates to information regarding an individual's prior record.

18).  Counsel also objected to the admission of the letter. (Tr. at 20).  Only portions of the letter were admitted. (Tr. at 20-25).  The court then proceeded to the *Sandoval* issue regarding the statement in the letter that petitioner was with a "known prostitute." (Tr. at 29-30).  Counsel continued to object to the officers' testimony about Jodi. (Tr. at 9-10).  The court admitted the testimony, "over objection," but stated that he would give a specific instruction that the testimony was not being offered for its truth, but rather for the officer's state of mind. (Tr. at 10).  Thus, production of Jodi's criminal record would not have changed the court's ruling, and defense counsel was not ineffective in failing to follow up on the request.

Finally, petitioner claims that counsel should have requested a jury instruction on "corroboration" pursuant to N.Y. Crim. Proc. Law § 60.50.  This section of the New York Criminal Procedure Law provides that: "A person may not be convicted of any offense solely upon evidence of a confession or admission made by him without additional proof that the offense charged has been committed." N.Y. Crim. Proc. Law § 60.50.  All that is required under section 60.50 is that other proof exists showing that the crime was committed. *Scott v. Fisher*, 652 F. Supp. 380, 427-28 (W.D.N.Y. 2009) (citations omitted).

In this case, there was ample additional proof that the crime was committed, and that petitioner committed the crime.  Petitioner had the drugs in his pocket, and the weight and packaging of the drugs indicated that there was intent to sell or "exchange" them.  Thus, the failure of petitioner's attorney to request a jury instruction on corroboration did not fall below the level of reasonable conduct.  In fact, such a request

would not have been appropriate under the circumstances of this case.

As found by the Appellate Division, counsel made appropriate motions, and conducted vigorous cross-examination of the prosecution's witness.  In an attempt to counter the prosecution's theory that petitioner intended to sell the cocaine, counsel put petitioner on the stand to testify that he did not intend to sell the crack cocaine, but rather intended to "enjoy" it with his passenger.  The Appellate Division's finding that petitioner was afforded the effective assistance of counsel did not violate the AEDPA, and petitioner's ineffective assistance of counsel claim may be dismissed.

## VI.   Denial of Section 440.10 Motion (Ground 4)

In the application, petitioner claims that the County Court erred in denying his motion to vacate on the ground that he should be raising his claims on appeal.  Petitioner argues that this holding is incorrect because much of the exhibits he submitted were not admitted at trial and were not "on the record."  Petitioner ultimately raised the grounds on appeal.  The Second Circuit has held that alleged errors in a post conviction proceeding are not grounds for habeas review "because federal law does not require states to provide a post-conviction mechanism for seeking relief." *Word v. Lord*, 648 F.3d 129, 132 (2d Cir. 2011) (citing inter alia *Bell Bey v. Roper*, 499 F.3d 752, 756 (8th Cir. 2007) (holding that infirmity in a state post-conviction proceeding does not raise a constitutional issue, cognizable in a federal habeas application)).  Thus, petitioner's final claim may be dismissed.[24]

**WHEREFORE**, based on the findings above, it is

_____

[24] Respondent also argues that this claim is not exhausted and procedurally defaulted.  This court does not have to reach this basis for denial because the claim is also not cognizable.

**RECOMMENDED**, that the petition be **DENIED and DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

Dated: September 25, 2014

Hon. Andrew T. Baxter
U.S. Magistrate Judge